SMITH MOTOR CAR CORPORATION, Plaintiff, *v.* UNIVERSAL CREDIT COMPANY, Defendant.*

Municlpal Court of New York, Borough of Manhattan, Ninth District, March 1, 1934.

*Kepecs & Frischer* and *Murray Frischer*, for the plaintiff.

*Goodman & Werner* and *Arthur Werner*, for the defendant.

WHALEN, J.  This is an action in replevin to recover a 1932 Ford car.  The plaintiff is a dealer in Chevrolet automobiles and used

---

* Affd., 154 Misc. 105.

cars and was represented throughout this transaction by its president, Smith. A man named Winet was the owner under a conditional bill of sale of the Ford car in question, upon which there was a balance due to the defendant, an automobile finance company. Winet had a discussion with Smith regarding the purchase of a new Chevrolet car and arranged to turn in the Ford as part payment. While the negotiations were going on the defendant repossessed the Ford car because of a default in the payment of an installment on the purchase price. Winet informed Smith of this development, and thereafter Smith called the defendant on the telephone and asked what arrangements could be made to redeem the Ford car. He was told that it would be necessary to present a certified check for $230, in payment of the balance of $220 due on the car, plus a $10 fee for repossessing, together with a written authorization from Winet for the delivery of the car. Winet then delivered his registration card for the Ford to Smith and signed before a notary public the seller's statement of sale on the back of the said card under date of April 17, 1933, constituting a bill of sale to the plaintiff. Winet also signed and delivered to Smith a letter authorizing the Universal Credit Company to deliver the car to the plaintiff upon payment of the balance due. This letter is dated April 17, 1933. Winet and Smith entered into a written contract dated April 18, 1933, for the purchase of a Chevrolet car for the sum of $552; the contract providing that the Ford car would be turned in at an allowance of $325. Smith then went to see Mr. Ruthenberg, who handled the matter for the defendant, and delivered a certified check for $230 and the letter of authorization from Winet and displayed the bill of sale from Winet. There is a dispute between Smith and Ruthenberg as to whether or not the bill of sale was shown to Ruthenberg, but on this point I think the probabilities are with the plaintiff. The defendant then delivered to the plaintiff a letter dated April 19, 1933, authorizing the Bergen Auto Sales, in whose possession the Ford car was at that time, to deliver the Ford car to the plaintiff. When the plaintiff attempted to get the Ford car it was told that there was a lien claimed on the car of $25 for services. The plaintiff sent a check for the $25 to the Bergen Auto Sales Company, but the plaintiff's representative was told that the car had been sold, and the plaintiff never did get the car and never heard from Winet again. Later on the defendant wrote to the plaintiff under date of April 27, 1933, returning its check for $230, and stating that Winet had paid the outstanding balance on his account and had redeemed the automobile. The defendant did this apparently on the strength of a letter received from Winet reading as follows:

"*April* 27, 1933.

" Universal Credit Company,
 " 295 Madison Avenue,
  " New York City.

 " Gentlemen: This is to advise that I have cancelled my order given to Smith Motor Car Corporation for a new Chevrolet. I am tendering herewith $220.00 to pay the outstanding balance on my Ford DeLuxe Coupe, Motor No. 72757, and hereby rescind the instructions given you in my letter of the 17th to deliver the Ford to Smith Motor Car Corporation.

   " Very truly yours,
    " [Signed] BENJAMIN WINET."

 It is clear on the evidence that Winet breached his contract with the plaintiff, and that plaintiff has suffered an injury. The question is what relief, if any, can the plaintiff secure as against this defendant? The defendant maintains that the plaintiff's remedy is an action for breach of contract against Winet or an action in conversion if title had passed to the plaintiff at any time. The plaintiff claims that it is entitled to maintain this action in replevin. It is necessary to decide the question as to whether or not title to the Ford car had passed to the plaintiff. It seems to me on the foregoing facts title had passed. On April nineteenth, when Smith left the defendant's office with the letter of authorization for the release of the Ford car, there was nothing more to be done by any of the parties, except for Smith to go and get the Ford car at the place where it was stored.

 Section 99 of the Personal Property Law reads as follows: " 1. Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred. 2. For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case."

 Section 100 provides as follows: " Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer: Rule 1. Where there is an unconditional contract to sell specific goods, in a deliverable state, the property in the goods passes to the buyer when the contract is made and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed."

 On April nineteenth the defendant had legal title to the car, and Winet had a special property therein, consisting of his right to

redeem on payment of the balance due. This special property right was assignable and capable of being sold and transferred by Winet to the plaintiff. Both Winet and the defendant had divested themselves of title to the Ford car and transferred it to the plaintiff on April nineteenth. Neither Winet nor the defendant thereafter had a right to dispose of the Ford car or treat it as their own.

Section 147 of the Personal Property Law reads as follows: " Where the property in the goods has passed to the buyer and the seller wrongfully neglects or refuses to deliver the goods, the buyer may maintain any action allowed by law to the owner of goods of similar kind when wrongfully converted or withheld."

That the buyer, in a case where the property in the goods has passed to it, has the right to maintain an action in replevin, is implied in the case of *Austin, Nichols & Co., Inc.,* v. *Heermance Storage & Refrigerating Company* (199 App. Div. 626). Although in that case on the facts the court held that title to the property involved had not passed to the buyer, and for that reason replevin was not maintainable.

It will be noted that section 147 covers a case where the seller " wrongfully neglects or refuses to deliver the goods," so that, if the owner of the goods delivers them to a third party in ignorance of the plaintiff's rights, no action in replevin or conversion may be maintained. However, on the evidence in this case, I deem it a fair inference that the defendant knew or should have known and realized that the property in the Ford car on April nineteenth had passed to the plaintiff and the defendant thereafter had no right to dispose of the car in violation of the plaintiff's rights.

At the trial the defendant contended that no action in replevin could be maintained by the plaintiff where it appeared that the defendant had disposed of the car prior to the commencement of this action, but the defendant now concedes that the law is otherwise. (*Tyler* v. *Young*, 46 Misc. 575; *O'Connor* v. *Lock*, 148 App. Div. 765; *Hitchcock* v. *Wimpleberg*, 103 id. 53; *Duboff* v. *Haslan*, 195 id. 117.) Again it would seem that, if the defendant disposed of the car in ignorance of the plaintiff's rights, it could not be held liable in an action of replevin, but the facts are in this case that the defendant knew of the plaintiff's rights. I am, therefore, of the opinion that the plaintiff is entitled to maintain this action of replevin.

The next question to consider is that of value of the car at the time of the trial. There is no proof of the condition and value of the car by any one who ever saw it. However, the plaintiff in its complaint alleges that the value of the car at the time of the commencement of the action was $325, and that allegation is admitted

by the answer. The testimony of Smith is sufficient to show that a car of that description worth the conceded value of $325 at the commencement of the action would depreciate to a value of $200 at the time of trial. I find the value at the time of trial to be $200.

The defendant claims that, if the plaintiff is entitled to recover, the plaintiff should be limited to the equity plaintiff had in the car over and above the $230 balance unpaid on April 19, 1933. If that should be true, then the plaintiff's equity in the car would have no value whatever at the time of trial, if the $230 were to be deducted from the $200. However, it appears that the claim for the unpaid balance that the defendant had on the car on April 19, 1933, was later extinguished by the payment to the defendant of the balance due by Winet, as appears from the defendant's letter of April 27, 1933. The defendant has been paid the balance on the car, and, if the plaintiff should be required to pay the balance again, the defendant would receive $230 it is not entitled to. If the defendant had not interfered in the matter and the Ford car had been delivered to the plaintiff, and thereafter Winet had failed to complete his contract, the plaintiff would have become the absolute owner of the car under the doctrine of *Genovese* v. *Lenobel* (154 Misc. 91, revg. 148 id. 548). The defendant by its unlawful interference prevented the plaintiff from securing this advantage and assisted Winet in his breach of contract with the plaintiff. If this reasoning is correct, then the plaintiff is entitled to the possession of the car free of any lien or claim by the defendant for its unpaid balance.

The next question to be considered is the question of what damages the plaintiff is entitled to for detention of the automobile between April, 1933, and the date of the trial, March 1, 1934. It seems to be conceded law that the measure of damages for the detention of an article of personal property that has a usable value is the rental value of the article during the period of detention. (*Allen* v. *Fox*, 51 N. Y. 562; *Rapp* v. *Mabbett Motor Car Co.*, 201 App. Div. 283; *Dettmar* v. *Burns Bros.*, 111 Misc. 189.) The plaintiff produced an expert on the rental of automobiles who testified that the net rental value of a similar car would be three dollars and seventy-five cents per day contingent upon the renting of the car for a minimum of fifty miles a day. On the testimony, I estimate the reasonable rental value of the car and damages for the detention thereof from April, 1933, the date when the plaintiff was refused delivery of the car and was told that it was sold, to March 1, 1934, the date of the trial, at $215.

The plaintiff is, therefore, entitled to a judgment directing the delivery of the car to the plaintiff, together with $215 damages for the detention thereof, or, in the alternative, to a judgment in the

sum of $415, the amount demanded in the complaint. Defendant's counterclaim is dismissed on the merits.

In as much as the Civil Practice Act requires a special form of decision and judgment to be entered in a replevin action, the attorney for the plaintiff will please settle a form of decision on two days' notice.