CENTRAL GREYHOUND LINES, INC., OF NEW YORK, Plaintiff, *v.* BONDED FREIGHTWAYS, INC., et al., Defendants.

Supreme Court, Trial Term, Onondaga County, August 2, 1948.

*John H. Hughes* for defendants.

*Hubert C. Stratton* for plaintiff.

SEARL, J. A jury has awarded plaintiff $1,642.95 damages following a collision between plaintiff's bus and a tractor-trailer owned by the corporate defendant and driven by the individual defendant at the east end of a bridge located a short distance west of the village of Montezuma on Route 31.

Defendants base this motion for a new trial upon two arguments: (1) that an improper rule of damages was adopted;

(2) that the court improperly charged the jury following one of defendant's requests.

A steel bridge spanned the Seneca River. Its total length was 342 feet. A steel superstructure, 188 feet in length, occupied the center of the bridge. From the easterly end of the superstructure a plank roadway ran to the extreme easterly end of the bridge a distance of 77 feet. A like construction prevailed at the westerly end of the superstructure. Throughout this 77 foot extension, on either end, steel girders extended upward from the flooring of the bridge on north and south sides a distance of four feet. From each end of the superstructure, the flooring descended a foot and a half to the eastern and western extremities. There were 6 inch rut rails at the extreme outer edge of the portion available for travel, which was 14 feet, 11¾ inches in width. Constructed apparently for use of but one wide vehicle at a time, two sheet iron treads ran near the center of the planking east and west to accommodate the tires. At either end of the bridge were three signs. One of these signs restricted the use of the bridge to not over ten-ton loads.

It was conceded that the bus, substantially 8 feet in width and 30 feet long, travelling east, reached a point 18 feet from the expansion plate at the east end of the bridge when it collided with defendant's truck and trailer, vehicle and load weighing thirty tons. The width of the tractor or trailer did not appear, but it was conceded that the width of the bridge, 14 feet–11 inches, was insufficient to permit the bus and trailer to pass.

As to the first objection, namely, the rule of damage charged: The court charged that damages, if any, were to be confined to first, the reasonable cost of labor and material in restoring the bus to the same condition as existed just prior to the accident, and, second, reasonable compensation for the loss of use during the period of repair and until it could be returned to service. Plaintiff offered evidence that the fair and reasonable value of parts necessarily replaced amounted to $86.52. As to the reasonable value of labor, the court left that item to the jury. Time sheets, being original documents kept in the ordinary course of business, were received in evidence. Plaintiff urged that the rate of $1.25 per hour for mechanics and $.95 for helpers was proven to be the prevailing rate actually paid, and that the total number of hours shown by time sheets indicated $512.25 was fair and reasonable for straight time and $68.30 overtime, or a total of $580.55. The court then detailed the claim made by defendant, namely, that the best evidence would be that given by

each individual mechanic as to the number of hours actually worked. The court then left to the jury, upon such evidence as had been received, as to what was the reasonable value of the labor necessarily required.

As to any claim for loss of use, the court told the jury that the length of time the bus was out of service was not the real test, but the length of time reasonably required, with the exercise of due diligence, before the bus could be restored to service, considering the times, ability to obtain labor and parts, requirements of inspection, with the duty upon plaintiff to use reasonable care to hasten and reduce the amount of damage.

One Campbell, of the Syracuse and Oswego Motor Lines, after being duly qualified, testified that the fair and reasonable rental value of a comparable bus was thirty-five cents per mile, the lessee to provide gasoline and the driver. The daily trip of the bus was shown to have been 186 miles. The court charged that in no event could a sum greater than $64.40 per day be allowed. The jury, by arriving at a verdict of $1,642.95, evidently allowed $667.07 for labor and parts, as claimed, with substantially fifteen days loss of use, the time it would have taken to make the repairs under normal conditions.

Defendant offered no contradictory evidence as to damage. If, at the time, defense counsel had in mind another or different theory as to the correct measure of damage, the court was not apprised of such theory.

Clearly it would have been improper to have submitted the loss of revenue as a basis of damages. " If the property injured has a usual rental value, this is to be taken as the criterion for ascertaining the value of its use ". (1 Clark's New York Law of Damages, § 440.)

In *Smith Motor Car Corp.* v. *Universal Credit Co.* (154 Misc. 100, affd. 154 Misc. 105) plaintiff produced an expert as to the rental value of automobiles. He gave testimony upon the rental value of a similar car. A long line of authorities support proof of loss of use as a proper measure of damages. (See *Allen* v. *Fox,* 51 N. Y. 562; *Rapp* v. *Mabbert Motor Car Co.,* 201 App. Div. 283; also, *Cardozo* v. *Bloomingdale,* 79 Misc. 605, where a new trial was granted because of the exclusion of evidence of " usable value "; also, *Murphy* v. *New York City Ry. Co.,* 58 Misc. 237; and *Sellari* v. *Palermo,* 188 Misc. 1057.)

Defense counsel has called to the attention of the court *Webster* v. *Longstaff* (263 App. Div. 930 [4th Dept.]) in support of the argument that plaintiff proceeded on an erroneous theory

as to measure of damages. By examination of the record on appeal, it appears that the action was in fraud, plaintiffs claiming loss of earnings because defendant misrepresented the financial condition of a corporation. Plaintiffs had obtained a verdict based on speculative earnings and the verdict was set aside. The situation there is not comparable to the instant case.

As to the second objection, namely, that the court improperly refused to charge as requested by defendant, or confused the jury, let us examine the record.

After defense counsel had made various requests to charge, he concluded with a request relating to the ten-ton warning sign. He stated:

" I ask Your Honor to say to the jury that so far as this law-suit is concerned that sign, or what it says, has nothing to do with deciding any of the issues in this case and the fact that his equipment weighed more than what this sign provided cannot be considered any evidence of negligence on the part of either Bonded Freightways or Mr. Wall."

" The Court: I so charge."

That request was charged without qualification.

Following this remark, counsel for plaintiff interjected the following: " Mr. Stratton: If the Court please, may I respectfully except to Your Honor's decision as to the 30 ton load going onto a ten ton bridge, and that I ask Your Honor to say to the jury that they may take into consideration the fact that the defendant was driving a 30 ton load onto a 10 ton bridge. This accident happened on the bridge and if they had been complying with the law the truck would not have been on the bridge and there would have been no accident, and *furthermore,* the fact that this is a 30 ton outfit may have some bearing and be given some consideration by the jury with reference to the speed and control."

The court had fully complied with defendant's request which covered that portion of plaintiff's remarks down to the word " furthermore ", which the court has italicized. From that point on the court was bound to take some notice of plaintiff's position.

Therefore, the court went on to distinguish and differentiate between the positions taken by respective counsel and stated to the jury: " The Court: I say to the jury this. Certainly the bridge did not collapse because of the weight of the semi-trailer upon the bridge, and so far as the weight goes as in

violation of any warning provision, that is not to be considered. If, however, the weight of the tractor and the tanker attached may have had any bearing upon the distance within which the vehicle might be brought to a stop, if the same contributed in any way to the collision because of the weight and the ability to stop, that then in that event the weight of the semi-trailer and its load might be considered, if it had any bearing upon that subject only.''

When defendant excepted to the above statement, the court added the following, to avoid any confusion or misunderstanding on the part of the jury: '' The Court: It is only intended, counsel, if the jury find that the failure to stop was caused or contributed to by the weight of the tanker or load; that that weight can only be considered as notice, if any, to the driver in regard to what distance he might reasonably bring his vehicle to a stop.''

Recognizing that momentum is figured by weight multiplied by speed, we cannot escape the fact that the driver of a vehicle and load of thirty tons must consider the weight in connection with the speed at which he is operating. Defense counsel urges that as the truck and trailer were being operated at the time of collision on a slight ascending grade that the weight of the equipment and load would aid in decreasing instead of increasing the stopping distance. Assuming for the moment the correctness of counsel's argument, yet the record is replete with evidence as to conditions relating to speed and stopping of both plaintiff's and defendant's vehicles. Witness Byrne, for plaintiff, testified as to his estimate of the speed of the tanker and trailer at time of impact. The driver of the bus estimated the speed of the tanker and trailer when it reached the bottom of a descending grade some 600 feet east of the bridge, as well as later. George W. Cowburn, a trooper, testified that defendant Wall claimed he was proceeding west at twenty-five miles per hour, did not see the bus until it was halfway across the bridge, that he did not see the bus until he, Wall, came to the bridge, and that he was unable to bring his vehicle to a stop. The trooper stated that the bridge was damp. The bus driver stated that the bridge was wet and dewy. Franklin Wall, defendant driver, stated the road on the bridge was damp, that when he was 50–75 feet off the bridge he saw the bus and applied his brakes, that he was proceeding twenty to twenty-five miles per hour and was practically at a standstill on the bridge when the collision occurred; that his machine did not skid.

With a damp roadway on the bridge, it is apparent that no driver could be able to accurately estimate stopping distance. Were a jury to be instructed that a driver could ignore either speed, or weight of a vehicle and load under his control, when approaching a narrow bridge, where but one vehicle could pass at a time, such instruction clearly would constitute error.

To say that the driver of a total load of 60,000 lbs. had no more obligation than the driver of a light Ford car when approaching an *impasse* would clearly be out of order. It would ignore entirely the maxim that care should be commensurate with danger.

This was a long and hotly contested trial. The jury were not lead astray nor left in a confused state of mind. They asked for no instructions after retiring.

The verdict is modest. The motion for a new trial is denied.